

**U.S. Department of Justice**

United States Attorney

*District of Columbia*

*Judiciary Center*

*555 Fourth St. N.W.*
*Washington, D.C. 20001*

August 26, 2005

**Hand Served in Court**

AFPD Dani Jahn

Joanne Roney Hepworth, Esq.

     Re: <u>United States v. Tommy Nguyen</u>
        Case No. 04-527 (RBW)

        <u>United States v. Nhan Thanh Nguyen</u>
        Case No. 04-527 (RBW)

Dear Counsel:

  I am writing to provide you with a plea offer and certain information in response to your request for discovery pursuant to Fed. R. Crim. P. Rule 16.

**I. Plea Offer**

  Your client is currently charged with Possession with Intent to Distribute MDMA (Ecstacy). Please contact me if your client in interested in a plea offer.

**II. Discovery**

  **A. Documents**

  Copies of the following documents are enclosed with this letter:

- Criminal Histories for each defendant
- DEA 7
- PD 163 for each defendant
- PD 81s
- Copies of driver licences

I have requested any crime scene reports, tests, photos, audiotapes, and videotapes. I will produce those immediately upon receipt.

**B.    Evidence**

   **1.    Physical Evidence**

At trial the government may seek to introduce the physical evidence that is described on the attached police reports and PD 81s, including .
- Fingerprint results, if any
- photos, if any

   **2.    Inspection**

Upon request, you are entitled to inspect and copy or photograph certain books, papers, documents, photographs, tangible objects, buildings or places that are within the possession, custody or control of the government. *See* Fed. R. Crim. Pro. 16(a)(1)(E). If you would like to view any of the evidence listed above or described on the attached police reports, please contact me immediately and we can make arrangements for you, or your certified investigator, to inspect the evidence. These arrangements will include a condition that you not raise any objection to the admissibility of such evidence at trial because of the break in the chain-of-custody occasioned by your inspection.

   **3.    Reports of Examinations or Tests and Experts**

At this time the government has not yet received the crime scene report, photos and/or fingerprint information. When I receive this information, it will be forwarded.

<u>DEA Chemist</u>.   If you are not be willing to stipulate to the results of the DEA analysis, please let me know **as soon as possible (in writing) so that there will be no trial delay**; I will then have to make arrangements for the chemist to testify.

<u>Narcotics Expert</u>. The government also anticipates calling a narcotics expert at trial. That expert may be Detective Mark Stone, Detective Anthony Washington, Angelo Hicks, or another expert of similar training and experience. Because of the large volume of narcotics cases set for trial, the government cannot determine at this time the identity of the expert.

The expert may testify -- by providing information or by rendering an opinion -- concerning the following:

(a) the procedures used by the Metropolitan Police Department for handling narcotics evidence and for safeguarding the chain of custody and integrity of the evidence in narcotics cases.

(b) the quantitative and qualitative analysis of the narcotics evidence by the DEA and the strength of the substance.

(c) the methods of using and purchasing narcotics in the District of Columbia, including but not limited to: the reasons for such methods; the cost (price) of narcotics, both wholesale and retail; the common dosage of, usable and measurable amounts, and strength of narcotics; packaging materials, cutting agents, scales, and paraphernalia for using drugs; the use of stashes, and methods used to avoid detection of narcotics.

(d) the methods for processing, packaging, selling, transferring and trafficking narcotics in the District of Columbia, including but not limited to the roles of different participants in drug trafficking schemes.

(e) that beepers, pagers, cellular phones, automobiles, stashes, stash houses, safe houses, crack houses, open air drug markets, couriers, ledgers, safes, and false identities are commonly used in the sale, transfer, processing and trafficking of narcotics in the District of Columbia and elsewhere.

(f) that possession of narcotics for use can be distinguished from possession of narcotics with intent to distribute, and that, for a variety of reasons, possession of numerous individually packaged narcotics, or possession of fewer packages but accompanied by other indicia of sale, is generally more consistent with an intent to distribute than with mere possession for personal use.

The expert will base his/her opinions on the foregoing on his/her years of training and experience in the area of drug investigations.

    The qualifications of the expert witnesses, Detectives Stone, Washington, and Hicks include, but are not limited to, the following:

    a.    Detective Stone has served on the MPD for more than 15 years, a significant number of which have been at NSID. Detective Stone has engaged in numerous narcotics investigations, including many long-term, undercover investigations and infiltrations. Stone has participated in the execution of several thousand narcotics-related search warrants and arrests and that he has manned observation posts and bought narcotics in an undercover capacity several hundred times. Detective Stone has served as Superior Court Resident Narcotics Expert for the past year, and has testified many times.

    b.    Detective Washington has been a police officer for more than 17 years. In September 1988 Detective Washington was assigned to the Fourth District vice unit as a narcotics investigator. In March 1990 Washington was assigned to the Narcotic Special Investigation Division as a narcotics detective. In November 1992

    Washington was detailed to the United States Department of Justice, Drug Enforcement Administration as a Task Force Officer, where he remained until January 7, 2000. Detective Washington has served as a Superior Court Resident Narcotics Expert since January 7, 2000, and has testified many times.

  c. Detective Hicks has been a police officer for more than 17 years. From 1984 through mid-June, 1991, Detective Hicks was assigned to Third District uniform patrol section that was mixed with several intra-district assignments that included the Drug Enforcement Unit and Power Shift Detail. Also, Detective Hicks was assigned to Third District Vice Unit participating in numerous investigations and arrest of narcotic violators. In 1991, Detective Hicks was assigned to NSID. Detective Hicks conducted several hundred narcotics-related search warrants and arrests; made more than 100 purchases of illicit narcotics; and participated in buy/bust operations. In addition, Detective Hicks has worked with the FBI and DEA on joint operations and was deputized during several of those operations.

  d. Apart from their broad and varied work experiences, Detectives Stone, Washington and Hicks have been trained at the Police Academy and have received ongoing education and training by various local and federal law enforcement agencies (including MPD, FBI, DEA, DOJ, and ATF) in areas including, but not limited to: narcotics surveillance; manufacture of narcotics; the use, sale, packaging, and distribution of narcotics in the District of Columbia; drug identification; weights and measures of narcotics; surveillance techniques; constitutional law issues involved in the search and seizure of criminal suspects and their belongings; conduct and operation of the Mid-Atlantic DEA Laboratory; chain of custody procedures; the safeguarding of narcotics evidence; investigative techniques; the relationship between firearms and drug trafficking; and the execution of observations posts and undercover operations. In addition, Detectives Stone, Washington, and Thomas have trained and instructed others, including police recruits and experienced officers, as well as members of the defense bar in the District of Columbia, in many of the areas listed above.

  These detectives are familiar with the packaging, use, distribution, cost, and availability of narcotic substances. These detectives have also kept abreast of developments in the narcotics trade by way of ongoing formal and informal education. With respect to the latter, Detectives Stone, Washington, and Hicks have participated in actual surveillance and arrests, which have involved contact with the participants of narcotics trafficking, including informants, cooperating witnesses, and "special employees."

  This letter discloses that the government may call a fingerprint expert to testify at trial. The expert may testify about the following subjects: the taking of fingerprints, how fingerprints are left, how fingerprints are lifted, the factors that affect the taking of fingerprints, the comparison of prints, and the identification of prints if there are sufficient "points" to render a print usable. The fingerprint

expert will testify about the fact that it is often difficult to obtain usable prints, and some of the reasons why a fingerprint might not be obtained (the condition of that persons hands–wet, oily, etc., whether that person is a "secreter", the condition of the item from which prints were attempted–wet, oily, etc., the material that item came in contact with and the likelihood of smudging either by the person or by any material it may come into contact with, the surface area of a person's finger that actually came in touch with the item, etc.). He or she will also testify about what methods are used to lift prints (e.g., magnetic dust or superglue), the comparison of a latent print to a known print using "points" which ensure an accurate comparison, and how even if a latent print is recovered, there are sometimes insufficient points to make that print useful.

This letter also advises that the government may call a Crime Scene Search Officer to testify about the fact that it is often difficult to obtain usable prints, and some of the reasons why a fingerprint might not be obtained (the condition of that persons hands–wet, oily, etc., the condition of the weapon–wet, oily, etc., the material the weapon came in contact with and the likelihood of smudging either by the person or by any material the weapon may come into contact with, the surface area of a person's finger that actually came in touch with the weapon, etc.). The officer will base his testimony on his experience as a crime scene search officer for the Metropolitan Police Department, which includes a one-week crime scene training course (which includes training on the recovery of latent prints), yearly re-certification courses, years of experience as a crime-scene officer, and numerous attempts in recovering latent fingerprints.

### C.   Rule 404(b) Evidence

None

### D.   Defendant's Rule 16 Statements

None known.

### E.   Criminal Record

Please refer to the Pretrial Services Report that you received at arraignment for information about your client's record. I will notify you in writing if the government learns of any additional convictions.

Criminal Records are attached.

### F.   Government's Discovery Requests

The government hereby makes the following discovery requests:

- notice of documents and tangible objects the defendant expects to introduce pursuant to Super. Ct. Crim. R. 16(b);

- a <u>Jencks</u> request for all prior statements of any defense witness (excluding the defendant) pursuant to Super. Ct. Crim. R. 26.2;

- a <u>Lewis</u> request (for which we request the name, date of birth, sex, and social security number of each defense witness prior to trial); and

- a request for information pertaining to any expert or scientific testimony or evidence pursuant to Rule 16(b)(1)(B) and (C).

Pursuant to Super. Ct. Crim. R. 16(b)(2), we note our continuing request to receive any material pursuant to Rule 16(b) as the case proceeds.

**G.     Alibi Demand**

The government makes an alibi demand pursuant to Super. Ct. Crim. R. 12.1. In accord with Rule 12.1, the government hereby notifies you that the time, date and place of the offense are indicated on the accompanying police paperwork.

Pursuant to Rule 12.1, in the event you intend to offer an alibi defense, please direct the appropriate notice to the assigned AUSA within ten days.

**H.     Other Information (<u>Brady</u> / <u>Lewis</u> / <u>Giglio</u>)**

The government is unaware of any <u>Brady</u> or <u>Giglio</u> information, but is aware of its continuing duty to disclose such information should it become known. Lewis information for the government's witnesses will be provided to you at the time of trial.

**III. Contact Information**

If you have any questions about the information provided above, you may contact me by telephone, fax, mail, or e-mail.

David P. Cora
Office of the United States Attorney
555 Fourth Street, N.W., Room 4844
Washington, D.C.  20530
202-616-3302  Fax:   202-514-8707
E-mail:   David P. Cora@usdoj.gov

If you file any pleading in this case, please note that our zip code has changed recently to 20530. Also, please fax any pleadings or correspondence so that we may be assured receipt of the document.

        Sincerely,

        KENNETH WAINSTEIN
        United States Attorney


By:   _____
        David P. Cora
        Assistant United States Attorney